JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

UMAIR WASIM,

                    Plaintiff,

          v.

U.S. FOODSERVICE, INC. et al.,

                    Defendants.

Case No. 5:24-cv-02692-HDV-SP

**ORDER GRANTING PLAINTIFF'S
MOTION FOR REMAND [10]**

## I.    INTRODUCTION

This action arises from Plaintiff Umair Wasim's employment as a commercial delivery driver.  Plaintiff asserts a series of FEHA-related claims alleging that Defendants U.S. Foodservice, Inc. and Anabel Valle-Chavez discriminated against him based on his disability, retaliated against him for complaining about his treatment, and defamed him in the termination process.  Defendants removed on the basis of LMRA preemption arguing that Plaintiff's claims require interpretation of the parties' collective bargaining agreement ("CBA").

Before the Court is Plaintiff's Motion to Remand ("Motion") [Dkt. No. 10].  Plaintiff contends that his claims are predicated exclusively on California anti-discrimination law and do not require any exegesis of the CBA sufficient to support preemption.

The Court agrees.  While Wasim's employment was subject to a CBA, the operative question is whether the Court will be called upon to *interpret* any "actively disputed" CBA terms in adjudicating Plaintiff's claims.  The Court concludes that no such analysis of disputed terms is required, and for that reason grants Plaintiff's Motion.

## II.    BACKGROUND

Plaintiff Umair Wasim ("Plaintiff") began working as a commercial delivery driver for Defendant U.S. Foodservice, Inc. ("US Foods") in March 2023.  Declaration of Jonathan L. Brophy ("Brophy Decl."), Ex. D, First Amended Complaint ("FAC") ¶ 9 [Dkt. No. 3]; Plaintiff's Motion for Remand ("Motion") at 7 [Dkt. No. 10].  Plaintiff was placed on leave for about two months because of a physical disability in his back.  *Id.*  ¶¶ 20–22.

On September 4, 2023, when Plaintiff returned to work, his manager placed him on light duty and reduced his schedule despite the fact that Plaintiff was able to work without restrictions.  *Id.* ¶¶ 23–24.  Several days later, Plaintiff experienced a reoccurrence of his back pain and notified his supervisors accordingly.  *Id.* ¶ 26.  US Foods's dispatcher instructed Plaintiff to take another delivery despite his injury.  *Id.* ¶¶ 27, 28.  Plaintiff did not feel comfortable completing this assignment because of his aggravated condition, so he refused.  *Id.*  After the dispatcher again instructed Plaintiff to complete the load assignment, Plaintiff again refused.  *Id.*  Upon leaving work

that day, Plaintiff attempted to contact transportation manager Marcos Lopez, but Lopez did not respond. *Id.* ¶ 29.

On September 11, 2023, Plaintiff contacted the transportation supervisor Lissette Madrigal to complain about his interaction with the dispatcher and to inquire about Plaintiff's next work assignment. *Id.* ¶ 31. After not receiving a response, Plaintiff reached out again later that day. *Id.* ¶ 32. Madrigal told Plaintiff that human resources would reach out to Plaintiff. *Id.*

On September 15, 2023, Plaintiff contacted Defendant Anabel Valle-Chavez, US Foods's Human Resources Generalist, to ask when he would be able to return to work. FAC ¶ 33; Motion at 7. Valle-Chavez responded that US Foods would follow up with Plaintiff the following week. *Id.* On September 18, 2023, Valle-Chavez informed Plaintiff that US Foods was terminating his employment. *Id.* ¶ 34; Motion at 7. Plaintiff filed an administrative complaint with the Department of Fair Employment and Housing ("DFEH") and on September 12, 2024, the DFEH issued Plaintiff a "right to sue" letter. *Id.* ¶ 36.

Plaintiff filed his Complaint against Defendants in San Bernardino Superior Court on September 12, 2024. Motion at 6. Plaintiff's Operative Complaint brings state law claims for (1) Disability Discrimination; (2) Failure to Accommodate Disability; (3) Failure to Engage in the Interactive Process; (4) Retaliation (Requesting Accommodation); (5) Retaliation; (6) Failure to Prevent Discrimination and Retaliation; (7) Wrongful Termination in Violation of Public Policy; (8) Violation of Labor Code Section 6310; (9) Violation of Labor Code Section 6311; (10) Defamation; and (11) Private Attorney General Act. FAC ¶¶ 37–130; Motion at 6–7.

On December 20, 2024, Defendants removed the action alleging LMRA preemption. Defendants' Notice of Removal ("NOR") [Dkt. No. 1]. The present Motion was filed on January 17, 2025. Motion [Dkt. No. 10]. The Court heard oral argument on February 27, and took the matter under submission [Dkt. No. 14].

## III.    LEGAL STANDARD

Federal courts possess limited jurisdiction covering only matters authorized by the Constitution and Congressional statute. *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994). A defendant who removes a case from state court bears the burden of establishing federal

jurisdiction. *Abrego Abrego v. Dow Chem. Co.*, 443 F.3d 676, 682 (9th Cir. 2006). Failure to do so requires remand. *Kelton Arms Condo. Owners Ass'n v. Homestead Ins. Co.*, 346 F.3d 1190, 1192 (9th Cir. 2003) ("Subject matter jurisdiction may not be waived, and . . . the district court must remand if it lacks jurisdiction.") (citation omitted). "Only state-court actions that originally could have been filed in federal court may be removed to federal court by the defendant. Absent diversity of citizenship, federal-question jurisdiction is required." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987) (citation omitted.) Federal question jurisdiction exists if the claims are "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

According to the "well-pleaded complaint rule," "federal question jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc.*, 482 U.S. at 392. However, a plaintiff may not defeat removal simply by omitting necessary federal questions. *JustMed, Inc. v. Byce*, 600 F.3d 1118, 1124 (9th Cir. 2010). If an area of state law has been "completely preempted," any state law claim thereunder is "considered, from its inception, a federal claim, and therefore arises under federal law." *Caterpillar Inc.*, 482 U.S. at 393.

Section 301 of the Labor Management Relations Act ("LMRA") states in relevant part, that "[s]uits for violation of contracts between an employer and a labor organization . . . may be brought in any district court of the United States." 29 U.S.C. § 185(a). Although preemption is not explicitly in the statute, courts have consistently held that the LMRA "authoriz[es] federal courts to create a uniform body of federal common law to adjudicate disputes that arise out of labor contracts." *Curtis v. Irwin Indus., Inc.*, 913 F.3d 1146, 1151 (9th Cir. 2019); *see also Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 210 (1985). For this reason, actions "alleging a violation of a provision of a labor contract must be brought under § 301 and be resolved by reference to federal law." *Allis-Chalmers Corp.*, 471 U.S. at 210. "A state rule that purports to define the meaning or scope of a term in a contract suit therefore is preempted by federal law." *Id.*

**IV.    DISCUSSION**

The Ninth Circuit in *Burnside v. Kiewit Pac. Corp.*, established a two-part test to determine whether Section 301 preempts state law claims. 491 F.3d 1053, 1059–60 (9th Cir. 2007). First, the

1    Court must determine whether the claim in question seeks purely to "vindicate a right or duty created

2    by the CBA itself" or is merely asserting a right conferred by state law. *Columbia Exp. Terminal,*

3    *LLC v. Int'l Longshore & Warehouse Union*, 23 F.4th 836, 842 (9th Cir. 2022); *see also Curtis*, 913

4    F.3d at 1152. If the right exists only under the CBA, then the claim is preempted, and no further

5    analysis is needed. *Columbia Exp. Terminal, LLC*, 23 F.4th at 842.

6         If not, courts proceed to step two to determine whether a plaintiff's state law right is

7    "substantially dependent" on an analysis of the CBA. *Id.*; *see also Caterpillar Inc.*, 482 U.S. at 394;

8    *Burnside*, 491 F.3d at 1060. The critical question here is "whether the claim cannot be resolved by

9    simply '***look[ing] to***' versus '***interpreting***' the CBA." *Curtis*, 913 F.3d at 1152 (emphasis added)

10    (quoting *Kobold v. Good Samaritan Reg'l Med. Ctr.*, 832 F.3d 1024, 1033 (9th Cir. 2016)). The

11    Ninth Circuit has "stressed that 'interpretation' is construed narrowly in this context," requiring

12    "more than [just to] 'consider,' 'refer to,' or 'apply.'" *Balcorta v. Twentieth Century-Fox Film*

13    *Corp.*, 208 F.3d 1102, 1108 (9th Cir. 2000) (internal citations omitted). "At this second step of the

14    analysis claims are only preempted to the extent there is an active dispute over 'the meaning of

15    contract terms.'" *Curtis*, 913 F.3d at 1152 (quoting *Livadas v. Bradshaw*, 512 U.S. 107, 124

16    (1994). Defendants bear the burden of establishing jurisdiction and "any doubt is resolved in favor

17    of remand." *Plute v. Roadway Package Sys., Inc.*, 141 F. Supp. 2d 1005, 1007 (N.D. Cal. 2001)

18    (citing *Boggs v. Lewis*, 863 F.2d 662, 663 (9th Cir. 1988)).

19         **A.  Step One: CBA or State Law Claims**

20         In general, "the rights conferred by [FEHA] are 'defined and enforced under state law

21    without reference to the terms of any collective bargaining agreement.'" *Ramirez v. Fox Television*

22    *Station, Inc.*, 998 F.2d 743, 748 (9th Cir. 1993) (quoting *Chmiel v. Beverly Wilshire Hotel Co.*, 873

23    F.2d 1283, 1286 (9th Cir. 1989)) (emphasis in the original).

24         It is clear that Plaintiff's claims are predicated on state law rights. Plaintiff does not base his

25    FEHA and defamation claims on any specific clauses of the CBA. In fact, his complaint contains no

26    reference to the CBA at all. Instead, Plaintiff's claims rely exclusively on state law. Motion at 12;

27    *see* FAC (relying on violations of FEHA (Cal. Gov't Code § 12900 et seq.), Labor Codes (Cal. Lab.

28    Code §§ 6310 and 6311), and defamation (Cal. Civ. Code §§ 45 and 46(3), (5)). Defendants

1    concede as much.  *See* NOR ¶ 15 ("Here, Plaintiff did not specifically reference or invoke the terms

2    of the CBA in his FAC.").  The only references to the CBA in this case arise out of Defendants'

3    defenses.  *See* Brophy Decl., Ex. E, Defendant US Foods, Inc.'s Answer to Plaintiff's First Amended

4    Complaint for Damages ("Answer") ¶¶ 4–6 [Dkt. No. 3].  But a defendant cannot remove a case

5    based solely on a federal preemption theory contained in an affirmative defense.  *See Caterpillar*

6    *Inc.*, 482 U.S. at 393 ("[A] case may not be removed to federal court on the basis of a federal

7    defense, including the defense of pre-emption, even if the defense is anticipated in the plaintiff's

8    complaint. . . .") (emphasis in original).

9          **B.  Step Two: Interpretation**

10          Defendants argue that, even if not preempted on its face, Plaintiff's first seven causes of

11    action under FEHA and his tenth cause of action for defamation are substantially dependent upon the

12    Court's interpretation of the CBA, opening the door to federal jurisdiction.  Opposition at 7.  Not so.

13          **1.  FEHA claims**

14          FEHA prohibits employers from discriminating against employees due to their actual or

15    perceived physical disability, Cal. Gov't Code § 12940(a)[1]; from failing to make a reasonable

16    accommodation and failing to engage in the interactive process, Cal. Gov't Code §§ 12940(m), (n);

17    and from discriminating or retaliating against employees for requesting an accommodation or filing

18    a complaint.  Cal. Gov't Code §§ 12940(h), (k), (m)(2).  This circuit has repeatedly held that Section

19    301 does not preempt FEHA claims.[2]  *See Ramirez*, 998 F.2d at 748 ("[Defendant] argues that

20

---

21    [1] Defendants argue that Plaintiff mischaracterized his own FAC when framing his injury on
22    September 8, 2023, as a "disability" in his Motion to Remand.  Opposition at 4, n.1.  The Court,
      taking the factual allegations as true and drawing all reasonable inferences in favor of Plaintiff as it
23    must, finds that Plaintiff's characterization of his injury as a disability is sufficient.  *See* FAC
      ¶¶ 25–29; Cal. Gov't Code §§ 12926(m), 12926.1(b) (defining "physical disability" as any disorder
24    or condition that "[a]ffects . . . [the] musculoskeletal" system and "[l]imits a major life activity,"
      such as work and providing "the definitions of physical disability . . . be construed so that applicants
25    and employees are protected from discrimination due to an actual or perceived physical or mental
      impairment that is disabling, potentially disabling, or perceived as disabling or potentially
26    disabling.").

27    [2] *See, Cook v. Lindsay Olive Growers*, 911 F.2d 233, 240 (9th Cir. 1990) (finding a religious
28    discrimination suit brought under FEHA not preempted); *Jackson v. Southern California Gas Co.*,

1  resolution of [plaintiff]'s action, which she brought under [FEHA], will require interpretation of the

2  Bargaining Agreement, which governs the terms of her employment. This argument goes against the

3  clear weight of our precedent. []In every case in which we have considered an action brought under

4  [FEHA], we have held that it is not preempted by section 301.").

5      Defendants argue that the Court needs to interpret the CBA to determine whether Plaintiff's

6  treatment and termination were discriminatory because the ability to assign him work and terminate

7  him are "management-related rights conferred to US Foods by the CBA[.]"  Opposition at 12.

8  Defendants cherry-pick the terms "work standards," "assign work requirements," "qualified,"

9  "available," "workloads," "conduct," and "safety" all as words that would beget interpretation of the

10  CBA.  Opposition at 12–13.  The Court finds this argument unpersuasive.

11      Plaintiff's claims do not rise or fall on whether Defendants had the right under the CBA to

12  treat Plaintiff as they did, but rather, depend on whether Defendants' treatment of Plaintiff violates

13  state law.  *See Rymel v. Save Mart Supermarkets, Inc.*, 30 Cal. App. 5th 859 (2018) ("[A] CBA

14  cannot be invoked to bypass state law statutory protections."); *see also Livadas v. Bradshaw*, 512

15  U.S. 107, 124 (1994) ("[W]hen the meaning of contract terms is not the subject of dispute, the bare

16  fact that a [CBA] will be consulted in the course of state-law litigation plainly does not require the

17  claim to be extinguished[.]").  Plaintiff alleges that Defendants discriminated against him due to his

18  disability by assigning him to an allegedly unsafe delivery and refusing to provide him another

19  and/or different assignment to accommodate his back injury after he had already complained of back

20  pain.  *See* FAC ¶ 28; Plaintiff's Reply in Support of Plaintiff's Motion to Remand ("Reply") at 5

21  [Dkt. No. 13].  He alleges that he informed Defendants of his physical disability that was impairing

22  him from completing the work as dictated by Defendants.  FAC ¶¶ 27–30.  He further maintains that

23  Defendants failed to engage him in any reasonable accommodation and instead terminated his

24

25  ───────────────

26  881 F.2d 638, 644 (9th Cir. 1989) (finding a racial discrimination suit brought under FEHA not preempted); *Chmiel*, 873 F.2d at 1286 (finding an age discrimination suit brought under FEHA not

27  preempted); *Ackerman v. Western Elec. Co.*, 860 F.2d 1514, 1517–18 (9th Cir. 1988) (finding a handicap discrimination suit brought under FEHA not preempted).

28

employment, thereby retaliating and discriminating against him.  *Id.* ¶¶ 41, 49, 64–65, 72–73, 96–97, 103–105.

The Court does not have to interpret ***any*** provision of the CBA to determine whether that conduct—even if in compliance with the CBA—is nevertheless discriminatory.  Defendants' opposition focuses on justifying their conduct under the CBA, but "reliance on CBA provisions to defend against an independent state law claim does not trigger Section 301 preemption."  *Irving v. Okonite Company, Inc.*, 120 F. Supp. 3d 1020, 1026 (C.D. Cal. 2015) (quoting *Humble v. Boeing Co.*, 305 F.3d 1004, 1011 (9th Cir. 2002)).

### 2.  Wrongful termination in violation of public policy

"In order to establish a common law cause of action for wrongful termination in violation of public policy the plaintiff must identify a public policy which: (1) is supported by a constitutional or statutory provision; (2) inures to the benefit of the public at large; (3) is fundamental and substantial; and, (4) is well established at the time of plaintiff's discharge."  *Deschene v. Pinole Point Steel Co.*, 76 Cal. App. 4th 33, 43 (1999).  California courts have found that Section 301 does not preempt a plaintiff's wrongful termination in violation of public policy claims predicated on a termination in violation of a state statute.  *Id.*; *but see Young v. Anthony's Fish Grottos, Inc.*, 830 F.2d 993, 1001 (9th Cir. 1987) (finding Section 301 preempted wrongful termination claim because plaintiff did not identify any state statute or relevant California public policy protecting opposition to IRS tax audits.).[3]

Here, Plaintiff plausibly alleges that Defendants wrongfully terminated him in violation of California public policies evidenced throughout FEHA.  FAC ¶¶ 87–93.  Indeed, FEHA

---

[3] Defendants purport to rely on *Hollinquest v. St. Francis Medical Center*, 872 F. Supp. 723 (C.D. Cal. 1994) and *Young v. Anthony's Fish Grottos, Inc.*, 830 F.2d 993 (9th Cir. 1987).  Opposition at 16.  But those cases do not concern FEHA claims nor do they involve any statutorily-declared public policy.  *See Hollinquest,* 872 F. Supp. at 726 (granting Section 301 preemption of wrongful termination claim because the Nursing Practices Act did not provide state law public policy); *see also Young,* 830 F.2d at 1002 (granting Section 301 preemption of wrongful termination claim because employees failed "to identify any state statute or other relevant public policy of California protecting opposition to IRS tax audits.").

1   declares—as a public policy—the importance of safeguarding every employee's right to

2   employment without discrimination.  Cal. Gov't Code § 12920 ("It is hereby declared as the public

3   policy of this state that it is necessary to protect and safeguard the right and opportunity of all

4   persons to seek, obtain, and hold employment without discrimination or abridgment on account

5   of … physical disability….").  Moreover, these protections under FEHA are fundamental and

6   substantial, and they were well-established at the time of Plaintiff's discharge.  *See id.*; *see also* FAC

7   ¶ 38.[4]

8                              **3.  Defamation claim**

9            Section 301 preempts defamation claims only in narrow circumstances where operative

10  defamatory statements are made pursuant to CBA-mandated disciplinary policies or procedures, or

11  where the statements are shown to be "inextricably intertwined with consideration of the terms of the

12  labor contract."  *Allis-Chalmers Corp.*, 471 U.S. at 213; *see also Tellez v. Pacific Gas and Elec. Co.,*

13  *Inc.*, 817 F.2d 536, 537 (9th Cir. 1987) (holding plaintiff's defamation claim not preempted since

14  CBA neither requires management to send written notice of suspension nor provides guidelines

15  where notice sent); *but see Shane v. Greyhound Lines, Inc.*, 868 F.2d 1057, 1063 (9th Cir. 1989)

16  (finding defamation claim preempted where alleged statements were contained in notices of intent to

17  discipline and notice of discharge required by the CBA).

18           That narrow exception does not apply here.  Plaintiff alleges that Defendants violated

19  California defamation law by making false statements in Plaintiff's personnel file regarding the

20  circumstances surrounding his termination, including that Plaintiff refused available work and

21  walked out without management approval.  Reply at 4; FAC ¶¶ 35, 111; Cal. Civ. Code §§ 45, 46(3),

22  46(5).  The CBA simply does not govern this allegedly defamatory conduct, nor does the case law

23  require LMRA preemption over this type of conduct.[5]

24  _____

25  [4] The Court also roundly rejects Defendants' argument that Plaintiff's claim is too vague.

26
27  [5] Defendants' argument depends upon a fundamental mischaracterization of Plaintiff's defamation
    claim.  Defendants contend that this Court must interpret various terms of the CBA (*i.e.,* "stoppage
    of work" and "just cause") because Plaintiff's defamation claim—according to Defendants—arises
28  directly from the discharge procedures regarding Plaintiff's termination.  Opposition at 8–9.  But this

**V.    CONCLUSION**

       For the foregoing reasons, Plaintiff's Motion to Remand is granted.[6]


Dated: March 19, 2025

_____
             Hernán D. Vera
             United States District Judge

---

is not what Plaintiff alleges.  In Plaintiff's FAC, he asserts that he could not perform his workload assignment because of his back pain, so he refused to complete the allegedly unsafe work assignment.  FAC ¶ 26–28.  Plaintiff alleges that in his personnel file, Defendants falsely stated that he refused available work and walked out without management approval.  FAC ¶¶ 35, 111 ("These false and defamatory statements included express and implied statements that Plaintiff refused available work and walked out without management approval.").

[6] Defendants ask this Court to exercise supplemental jurisdiction over the remaining state law claims.  Opposition at 17.  Given the Court's finding that LMRA preemption does not apply, there is no federal question jurisdiction and therefore no basis for supplemental jurisdiction.